**Jane NORDMAN, Respondent,**

v.

**GOLDFINES, et al., Relators.**

No. 48345.

Supreme Court of Minnesota.

Aug. 4, 1978.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Gary M. Hagstrom, Minneapolis, for relators.

Abrams & Spector, Minneapolis, for respondent.

Considered and decided by the court without oral argument.

PER CURIAM.

Employer and several insurers who furnished it compensation coverage during the years prior to employee's disablement seek review of a decision of the Workers' Compensation Court of Appeals determining that they are not entitled to reduce payments to employee for permanent total disability by the amount of Social Security disability benefits she receives. We affirm.

Employee, a meat wrapper, has been totally disabled since September 15, 1975, by a lung disease caused by exposure to fumes in the course of her work. She has received Social Security disability benefits since April 4, 1976. Pursuant to the parties' agreement relators have paid her $40,500 representing 300 weeks of benefits for a 60-percent permanent partial disability of her lungs [1] and $3,915 for permanent total disability from September 15, 1975, to April 3, 1976, at a weekly rate of $135. Relators agreed to continue payments for permanent total disability after that date at the weekly rate of $135 subject to statutory adjustment and "less the reduction for Social Security disability benefits provided by Minnesota Statute 176.101, Subd. 4, if the Court so orders."

Minn.St.1976, § 176.101, subd. 4, provides in pertinent part:

"For permanent total disability, as defined in subdivision 5, the compensation shall be 66⅔ percent of the daily wage at the time of the injury, subject to a maximum weekly compensation equal to the maximum weekly compensation for a temporary total disability and a minimum weekly compensation equal to the minimum weekly compensation for a temporary total disability. This compensation shall be paid during the permanent total disability of the injured employee but *after a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program* if such disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision. Such reduction shall also apply to any old age and survivor insurance benefits." (Italics supplied.)

The court of appeals held that relators' payment of compensation for permanent partial disability was not payment of "$25,000 of weekly compensation benefits" within the meaning of § 176.101, subd. 4, both because that phrase referred only to benefits paid for permanent total disability and because permitting the use of compensation paid to employee for permanent partial disability to reduce relators' liability for permanent total disability benefits would contravene the provisions of § 176.021, subd. 3, relating to permanent partial disability compensation. We do not pass on the correctness of the court of appeals' interpretation of "$25,000 of weekly compensation benefits" as meaning only benefits paid for permanent total disability, but we agree that the legislature did not intend this language to include amounts paid an employee for permanent partial disability.

Minn.St.1976, § 176.021, subd. 3, provides in part:

"All employers shall commence payment of the compensation at the time and in the manner prescribed by this chapter without the necessity of any agreement or any order of the division. Except those of medical, burial, and other nonperiodic benefits, payments shall be made as nearly as may be at the intervals when the wage was payable; provided, however, that payments for permanent partial disability shall be made by lump sum payment, and the provisions of section 176.165 shall not apply, without the necessity of any agreement, or order of the division, upon termination of the healing

---

1. See, Minn.St. 176.101, subd. 3(40).

period, or as soon as such disability can be ascertained. If doubt exists at such time as to the eventual permanent partial disability, payment shall be then made for the minimum permanent partial disability ascertainable in lump sum, and further lump sum payment shall be made upon any later ascertainment of greater permanent partial disability. At the time of the tender of any such lump sum payment, the employee shall be furnished with a copy of the medical report upon which such payment is based, together with a statement by the insurer as to whether the tendered payment is for minimum permanent partial disability or final and eventual disability. *Compensation for permanent partial disability is payable concurrently and in addition to compensation for temporary total disability and temporary partial disability as set forth in section 176.101, subdivisions 1 and 2, and for permanent total disability as defined in section 176.101, subdivision 5; and such compensation for permanent partial disability shall not be deferred pending completion of payment for temporary disability or permanent total disability, and no credit shall be taken for payment of permanent partial disability against liability for permanent total disability. Liability on the part of an employer or his insurer for disability of a temporary total, temporary partial, and permanent total nature shall be considered as a continuing product and part of the employee's inability to earn or reduction in earning capacity due to injury or occupational disease and shall be payable accordingly. Permanent partial disability is payable for functional loss of use or impairment of function, permanent in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation.*" (Italics supplied.)

2. Relators urge that because Minn.St.1976, § 176.101, subd. 3, refers to permanent partial disability in terms of weeks, the compensation provided therein is "weekly compensation." The argument is not persuasive since use is

It is immediately apparent from reading this provision that compensation for permanent partial disability is distinguished from other kinds of compensation. The directive that compensation for permanent partial disability be paid by lump sum was added by Ex.Sess.L.1967, c. 40, § 5; the last sentences of § 176.021, subd. 3, italicized above, were added by L.1974, c. 486, § 1. In the 1967 act the legislature gave the employer the right, "after a total of $25,000 of *weekly* compensation benefits has been paid," to reduce the amount of weekly compensation benefits payable to the employee by the amount of government disability benefits he is receiving as a result of his work-related injuries. (Italics supplied.) Ex.Sess.L. 1967, c. 40, § 9. The fact that in the same act the legislature directed both that this reduction could be made after payment of $25,000 of weekly compensation benefits and that payment for permanent partial disability is to be made by lump sum furnishes some support for the conclusion that the legislature did not intend payments made for permanent partial disability to be included in the "$25,000 of weekly compensation benefits."[2] The sentences added by L.1974, c. 486, § 1, require the same conclusion if effect is to be given their requirements that payment of such compensation be concurrent with, but "separate, distinct and in addition to payment for any other compensation," and that "no credit shall be taken for payment of permanent partial disability against liability for permanent total disability."

In construing provisions of the Workers' Compensation Act, each is viewed as supplementary to the others, *Christensen v. State, Department of Conservation*, 285 Minn. 493, 175 N.W.2d 433 (1970), and the act is given a liberal construction. *Carey v. Stadther*, 300 Minn. 88, 219 N.W.2d 76 (1974). If these principles are applied, the only interpretation of § 176.101, subd. 4, which will give effect to § 176.021, subd. 3,

made of weeks merely to calculate the amount of compensation to which an employee is entitled for the permanent partial disability he has sustained, but such compensation is not paid weekly.

is that the legislature did not intend that compensation paid for permanent partial disability is to be included in the "$25,000 of weekly compensation benefits," payment of which under § 176.101, subd. 4, permits an employer-insurer to reduce subsequent payments for permanent total disability by the amount an employee receives in Social Security payments. Using compensation paid for permanent partial disability to satisfy the $25,000 requirement would contravene the command of § 176.021, subd. 3, that no credit be taken for payment of such compensation against liability for permanent total disability.

Relators insist, however, that they are claiming a credit, not against their permanent total disability compensation liability, but against the Social Security disability benefits employee is receiving. Their argument ignores the facts that their claim to the credit is based on their having paid the permanent partial disability compensation and that, had that payment not been made, they would have no reason to assert that their liability for permanent total disability should be reduced. We are compelled to conclude that allowing the credit would contravene the requirements of § 176.021, subd. 3, and cannot have been intended by the legislature.

Employee is allowed attorneys fees of $350.

Affirmed.