Clarence E. ILLG, Trustee for the next
of kin of Neil Thomas Illg,
Petitioner, Appellant,

v.

FORUM INSURANCE CO., Respondent.

No. C2–87–2002.

Supreme Court of Minnesota.

Jan. 31, 1989.

Lynn J. Hummel, Joseph A. Evans, Detroit Lakes, for petitioner, appellant.

Kay Nord Hunt, Robyn N. Moschet, James C. Searls, Minneapolis, for respondent.

KELLEY, Justice.

In this declaratory judgment action, an employer's workers compensation insurer claims a right to reimbursement for payment made by it to the Special Compensation Fund (Fund) from a wrongful death settlement offer made by a negligent third party to the trustee for the deceased employee's heirs and next of kin. The trial court ruled the workers compensation carrier was not entitled to assert a subrogation or indemnity claim against the wrongful death settlement offer made to the trustee. In reversing that decision, the court of appeals held that Minn.Stat. § 176.061, subd. 7 (1988) does authorize the assertion of such a claim by a workers compensation carrier. We reverse.

The facts giving rise to this litigation are undisputed. Neil Illg, a single person leaving no dependents, as that term is defined in Minn.Stat. § 176.111 (1988), while operating a motor vehicle in the course of his employment with Grover–Lindberg, Inc., was killed in a collision with an automobile operated by Gustave Hinz. Forum Insurance Company, respondent, the workers compensation insurer of Grover–Lindberg, paid $25,000 to the Fund as required by Minn.Stat. § 176.129, subd. 2 (1988).[1]

1. Minn.Stat. § 176.129, subd. 2 (1988) provides in part:

State Farm Insurance Company, the insurer providing liability coverage on the Hinz vehicle, offered its $50,000 policy limits to Clarence Illg, the trustee for the next of kin of Neil Illg appointed pursuant to Minn.Stat. § 573.02, subd. 3 (1988). Respondent, claiming it was entitled to indemnity or contribution, asserted a claimed right to be reimbursed in whole or in part for the payment it had made to the Fund.[2]

These stipulated facts raise the legal issue of whether a workers compensation insurer has a legal claim for reimbursement to the $25,000 it paid to the Fund under Minn.Stat. § 176.129, subd. 2. Because this issue is one of law only, our review focuses on determining if the law was correctly applied by the courts below. *See Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

1. The respondent bottoms its claim on Minn.Stat. § 176.061, subd. 7 (1988) which, in relevant part provides that "the employer * * * has a separate additional cause of action against the third party to recover any amounts paid * * * *for other compensation* payable under this section resulting from the negligence of the third party." (Emphasis added). Respondent contends "other compensation payable" includes payments it was statutorily required to make to the Fund when Illg died in these circumstances without leaving surviving dependents. The court of appeals agreed with that position.

To determine whether Forum's payment to the Fund constituted "compensation" as the word is used in Minn.Stat. § 176.061, subd. 7, we consider the various provisions of the Workers Compensation Act and, when appropriate, rules of statutory interpretation in order to ascertain the intent of the legislature. For example, the word "compensation" as used in the Act, depending on the context of the statutory provi-

sion in which it appears, may have different meanings. *See, e.g., Christensen v. State Dep't of Conservation, G. & F.,* 285 Minn. 493, 497, 175 N.W.2d 433, 436 (1970). Respondent argues that since Minn.Stat. § 176.011, subd. 8 (1988) defines "compensation" as "all benefits provided by this chapter on account of injury or death," and since we have held that the words "benefit" and "compensation" are synonymous, *see St. Martin v. KLA Enterprises, Inc.,* 269 N.W.2d 59, 61 (Minn.1978), and since Minn.Stat. § 176.129, subd. 2 (1988) provides its $25,000 payment was for the *"benefit* of the special compensation fund," therefore, it is entitled to reimbursement from the trustee for Illg's heirs. Were our examination confined solely to those statutory provisions, that contention would not be implausible, but to so consider those definitions in isolation without reference to related provisions of the Act, as we have consistently held, would be impermissibly restrictive. *See, e.g., Kachman v. Blosberg,* 251 Minn. 224, 229, 87 N.W.2d 687, 692 (1958); *Kollodge v. F. & L. Appliances, Inc.,* 248 Minn. 357, 360, 80 N.W.2d 62, 64 (1956); *Mattson v. Flynn,* 216 Minn. 354, 358, 13 N.W.2d 11, 14 (1944).

To accept Forum's argument equating "benefit" as used in section 176.129 with "compensation" would be inconsistent with other provisions of the Act. As the word "benefit" is used in Minn.Stat. § 176.129, it is clear that the benefit is to the Fund. To the contrary, in other sections of the Act, when the terms "benefit" and "compensation" are employed, they describe payments to be made by the employer or its insurance carrier to an injured employee or a deceased employee's dependent heirs. The liability of employers to pay compensation is established by section 176.021, and the compensation payable to employees or survivors is enumerated in subdivision 3 of

In every case of death of an employee resulting from personal injury arising out of and in the course of employment where there are no persons entitled to monetary benefits of dependency compensation, the employer shall pay to the commissioner the sum of $25,000 for the benefit of the special compensation fund.

2. Respondent likewise claimed reimbursement of $2,686 for ambulance and funeral expenses it had paid on behalf of the decedent following his death. No dispute exists relative to this claim for reimbursement and appellant concedes that this amount must be reduced from any settlement made with the third party and turned over to respondent.

that section which makes no reference to the Fund. Minn.Stat. § 176.021 (1988) lists circumstances when "compensation" becomes payable. That section, likewise, fails to reference payments made to the Fund. The section enumerating and describing benefits payable on death omits any inclusion of payment to the Fund. *See* Minn.Stat. § 176.111 (1988). Furthermore, Minn.Stat. § 176.129, subd. 2, itself, only requires payment into the Fund "where there are no persons entitled to monetary benefits of dependency compensation." When those provisions of the Act, which directly address "compensation" and "benefits" in the context of monetary reparation payable to those who have sustained work-related injuries or to those dependents who have suffered loss as the result of a work-related death, are considered within the totality of the overall statutory scheme, it appears to us that payments to the Fund required by section 176.129, subd. 2 has the characteristic more akin to an assessment similar to the 20 percent surcharge required by section 176.129, subd. 3.[3] Accordingly, we hold that payments made to the Fund are not considered as "compensation" within the meaning of section 176.061, subd. 7 because no payment was made by the respondent to Illg's trustee nor to his heirs or next of kin, but rather to the Fund for the benefit of the workers compensation system as a whole, and, thus, was an assessment imposed by the legislature upon the workers compensation insurer. Therefore, there is no right to seek reimbursement for payments made to the Fund.

In so holding, we choose to align ourselves with those courts of other jurisdictions which have disallowed employer reimbursement of similar types of payments to similar funds.[4] The Texas court denied recovery to an employer-insurer seeking reimbursement in a similar factual setting. *Texas Employers Ins. Ass'n v. Myers*, 496 S.W.2d 940 (Tex.App.1973). It noted that its holding did not result in double recovery to the survivor, but that to have held contrary would have penalized the survivors who had received no payments from the employer or its insurer or, in fact, from the workers compensation system itself. *Id.* at 942. Similar reasoning was employed by the Kansas court in denying recovery to a compensation insurer in a case where the insurer assumed a posture similar to that of Forum in the instant case. The Kansas court noted that payment made to the Fund was not compensation because it was not used to make up for any loss suffered by the worker or his dependent, and further that the amount paid to the Fund was not measured by the character or extent of the loss, but rather consisted of an arbitrary amount fixed by the legislature, and thus was a business expense to be borne by the insurer. *Farm Bureau Mut. Ins. Co. v. Commercial Standard Ins. Co.*, 5 Kan.

3. Minn.Stat. § 176.129, subd. 3 (1988) reads in full:

> **Subd. 3. Payments to fund, injury.** If an employee suffers a personal injury resulting in permanent partial disability, temporary total disability, temporary partial disability, permanent total disability, or death and the employee or the employee's dependents are entitled to compensation under sections 176.101 or 176.111 the employer shall pay to the commissioner a lump sum amount, without any interest deduction, equal to 20 percent of the total compensation payable. The rate under this subdivision shall be adjusted as provided under subdivision 4a and applies to injuries occurring after June 1, 1971, for payments made on or after January 1, 1984. This payment is to be credited to the special compensation fund and shall be in addition to any compensation payments made by the employer under this chapter. Payment shall be made as soon as the amount is determined and approved by the commissioner.

4. According to 2A Larson, *Workmen's Compensation Law*, § 74.24 (1985), the jurisdictions are split on the issue of whether the employer or workers compensation carrier may recover payments made to a "death without dependents" fund. Kansas, Texas and Utah hold that payment to the fund is not compensation that may be recovered. California holds that payment into such a fund is compensation and may be recovered by the workers compensation carrier against the third party tortfeasor. *See Allstate Ins. Co. v. Bliss*, 725 P.2d 1330 (Utah 1986); *Travelers Ins. Co. v. Sierra Pac. Airlines*, 149 Cal.App.3d 1144, 197 Cal.Rptr. 416 (1983); *Associated Indem. Corp. v. Pacific Southwest Airlines*, 128 Cal.App.3d 898, 180 Cal.Rptr. 685 (1982); *Employers Liab. Assurance Co. v. Miller*, 497 S.W.2d 122 (Tex.1973).

App.2d 127, 612 P.2d 1265 (1980).[5]

In reaching its decision in this case, the court of appeals relied on its opinion in *General Casualty Co. v. Consolidated Freightways Corp.*, 413 N.W.2d 157 (Minn. App.1987) where it had held that payment to the fund was "compensation" under Minn.Stat. § 176.061, subd. 7, and that, therefore, the employer-insurer could recover payments made to the Fund. In our view, the court of appeals' reliance on *General Casualty* was inapt for at least two reasons. First, *General Casualty* did not involve a wrongful death settlement—it was a suit brought by the employer's compensation insurer against the third party tortfeasor, and did not involve a dispute between the compensation carrier and the heirs and next of kin of an employee-decedent. Second, as we have indicated, merely equating "benefit of the compensation fund" as used in Minn.Stat. § 176.129, subd. 2 with "compensation" as defined in Minn.Stat. § 176.011, subd. 8 ignores other statutory provisions demonstrating that the words "other compensation" when used in section 176.061, subd. 7 do not refer to the $25,000 the compensation carrier paid into the Fund, but rather is limited to amounts the carrier had paid to injured employees or surviving dependents. Moreover, the opinion in *General Casualty* fails to address the complete absence of any other provision in the workers compensation law providing any indication of a legislative intent to adversely affect the legal rights of heirs and next of kin who have received no recompense for loss they have sustained from the workers compensation system.

In the circumstances present in this case, if Forum may maintain this action, it is not the third party defendant who is bearing the cost: rather, the decedent's surviving parents and siblings are the ones who will be so burdened. Those survivors, had the settlement gone through, would have recovered $50,000 (less ambulance and funeral expenses) under the trial court's ruling, but under the court of appeals' decision, the surviving family's recovery would have been reduced by more than half.[6] In either scenario, the third party tortfeasor liability would remain the same; its exposure would be $50,000, the policy limits. Application of the court of appeals rationale, however, would result in the surviving family normally having to bear the burden the Workers Compensation Act places upon the employer to make the $25,000 assessment to the Fund. In *General Casualty* the court of appeals attempted to distinguish *Texas Employers Ins. Ass'n*, 496 S.W.2d 940, because the court had denied the insurer recovery from the decedent's heir because the latter had received no workers compensation benefits, 413 N.W.2d at 160. Forum is attempting to do exactly what the insurer in that case was attempting, to recover from surviving heirs and next of kin who have received no compensation benefits.

Because payment to the Fund by a compensation insurance carrier following the death of an employee is not a "benefit"

---

5. The California worker's compensation statute specifically provides that an employer has a cause of action against a third party tortfeasor to recover sums paid into a similar fund created in that state. *See Travelers Ins. Co. v. Sierra Pacific Lines*, 149 Cal.App.3d 1144, 197 Cal.Rptr. 416 (1983). We note, however, that in so holding the court indicated that notwithstanding the fact the statute had been amended to specifically clarify the asserted right, recovery may have been allowed in California even before the amendment. *Id.* at 1151, 197 Cal.Rptr. at 419.

6. We are aware of, and have not overlooked, the fact that in this case the heirs and next of kin of Neil Illg would have received the maximum recoverable damages under the court of appeals' decision. We take notice of our own files and note that in *Illg v. Tri–State Ins. Co. of Minneso-*

ta, 429 N.W.2d 924 (Minn.App.1988) (pet. for rev. granted 433 N.W.2d 429 (Minn.1988)) the court of appeals ruled that the underinsured motorist carrier on the decedent's employer's motor vehicle insurance policy must pay to the trustee on behalf of the surviving heirs the difference between their total damages of $60,000 as determined by an arbitrator under the terms of that policy, and the amount recovered from Hinz's liability insurance carrier. However, the availability of UIM coverage to supplement the appellant's recovery is a mere fortuity and cannot affect the decision in this case. The right of legal heirs to full compensation under the death by wrongful act statute should not depend upon the presence or absence of other insurance which may be fortuitously available.

paid to the surviving heirs and next of kin, who have only a death by wrongful act claim, we hold it is not "compensation" recoverable under Minn.Stat. § 176.061, subd. 7.

2. Respondent claims that even if it does not have a reimbursement right under section 176.061, subd. 7, it has the right to recover indemnity under section 176.061, subd. 10. Under the latter subdivision "an employer has a right of indemnity for any compensation paid or payable pursuant to this chapter." In *Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 327 (Minn.1987), we noted: "Accordingly, subdivision 10 cannot be considered as if it stood alone but must be placed in the context of the workers compensation system as a whole and, with particularity, in the context of the third party liability section of which it is a part." Earlier in this opinion, we have held that a claimed employer right to reimbursement is nonexistent unless payments of compensation have been made to the employee's dependents or the payments are made to directly benefit the employee or his surviving family, such as medical, ambulance, and funeral payments. As we have previously noted, one is entitled to indemnification only if an identical duty by one is discharged by another. *Id.* at 328. Forum's payment into the Fund did not discharge the negligent third party's duty to compensate by way of damages payable to the nondependent heirs and next of kin under the death by wrongful act statute. Furthermore, a compensation carrier's indemnity right is specifically limited to the specific types of compensation enumerated in subdivision 10 itself. Payments, such as the one made by Forum into the Fund are not included.

Accordingly we reverse and remand to the trial court for entry of judgment.